The opinion of the court was delivered by
Poché, J.
Under an indictment of nine persons for burglary, five of the defendants were tried, and they are now appellants from the-several verdicts rendered in the case, as hereinafter stated.
*274 The indictment was framed in accordance with the provisions of ■Sec. 850 of the Revised Statutes, which reads as follows:'
“Whoever, with the intent to kill, rob, steal, commit rape, or any 'other crime, shall, in the nighttime, break and enter, or having, with such intent, entered in the night time, break a dwelling house, any person being lawfully therein, and such offender being at the time of breaking and entering armed with a dangerous weapon, or committing an actual assault upon any person lawfully being in such house, ■any person present aiding, assisting or consenting in such burglary or accessory thereto before the fact by counseling, hiring or procur-
■ ing such burglary to be committed, on conviction shall suffer the punishment of death.”
The appellants were tried separately, as follows:
1. Charles Arabic and Arvilieu alias Blane Beard were tried together, were convicted as charged, and sentenced to the penitentiary for life.
2. Syphroyen Méehe and Lastie Smith were tried together, were convicted under Sec. 851 of the Revised Statutes, and sentenced to •two years’ imprisonment at hard labor.
3. And Jerome Méche, who was tried alone, was convicted under ■ Sec. 854, and received a like sentence of two years’ imprisonment.
The charge against all the accused was:
'Thatthey “did feloniously and burglariously, with the intent to kill, in the night time, enter and break the house of Jean Baptiste Dupléchin, he, the said Jean Baptiste Dupléchin and his family being lawfully therein; the said Gerassin Méche (and other named accused) being at the time of such breaking and entering armed with dangerous weapons.” * * *
Although the trials were held and conducted separately, and resulted in three separate and distinct verdicts, yet the means of defence invoked are the same in each case, and the leading bills of ■exception, which it is proposed to examine in this opinion, are ■ similar. In his rulings in one case the trial judge, for the sake of brevity, and in order to avoid unnecessary repetitions, refers to his reasons in one of the other eases, and vice versa.
Hence it might prove more convenient to examine together the leading features of discussion, which apply alike to all three of the (trials.
The fundamental complaint of all the appellants is in reference to "the exclusion .of evidence which they persistently sought to intro *275 duce for the purpose of explaining their intent in going to the prosecutor’s house, and the motives which prompted their intent as means to negative the charge of their having broken into the house with the intent to kill.
They also complain oí the unwarranted restriction placed to their cross-examination of leading State witnesses, and of the resulting denial of their right to impeach or contradict the testimonj' of such witnesses on points and matters which were pertinent to the issue of their guilt or innocence of the charge brought against them.
By reference to the indictment, it will be noticed that the burglary with which the defendants were charged, consisted of their breaking and entering the prosecutor’s house in the night time, they being then armed with dangerous weapons, with the sole and restricted intent to kill. They were not charged with the commission of any crime, as a sequel or result of such entering.
Hence it follows that the defendants could not be convicted of any other crime but that of breaking and entering, while armed with dangerous weapons, in the night time, with intent to kill.
The pivotal point in the case as presented by the principal bills of exception hinges, therefore, upon the proof of the intent with which the accused parties broke and entered into the house of Dupléchin.
This conclusion flows not only from the plain text of the statute as read into the indictment, but it finds ample support from the definition of burglary at common law, and in very respectable authorities, both from judicial utterances and from commentaries on the subject.
“Burglary,” it is said, is “the name of a crime which consisted at the common law in breaking and entering into the dwelling house of another, in the night, with intent to commit some felony within the same, whether the felonious intent was executed or not. * * * The offence is not complete without the felonious intent. A breaking and entering without this is only a trespass.” Abbott’s Law Dictionary, verbo “Burglary.”
Commenting on this subject in his work on “ Criminal Practice and Pleadings,” Archbold says:
“The intent to commit the felony is an essential ingredient in burglary, without which it would be merely a trespass. * * -In •general the intent may be presumed from what the offender actually •does after breaking and entering; if he commit a felony it may *276 fairly be presumed that he entered for that purpose. * * * Biot this like other presumptions may be rebutted. (Italics ours.) * * * If a man break and enter the house of another in the night, with intent to beat him only, and in beating him he kill him, it is not burglary; here the presumption would be that he intended to commit a murder; but the presumption is rebutted by showing what his real intent was at the time of breaking and entry.” P. 340.
In Roscoe’s Criminal Evidence, pp. 365, 366, the same principle is* illustrated, as follows:
“If it appear that the intent of the party in breaking and enter-ing was merely to commit a trespass, it is no burglary: as where the prisoner enters with intent to beat some person in the house,. even though killing and murder may be the consequence; yet if the-prisoner’s intention was i ot to kill, it is still not 'burglary. * * The intent must be proved as laid. (Italics ours.) Thus, if it be laid, with intent to commit one sort of felony, and it be proved that it-, was with intent to commit another, it is a fatal variance.”
Bishop, in his treatise on Criminal Law, still further elaborates thei rule, which is construed as requiring proof of two intents as. essential ingredients in both larceny and burglary. He says:.
“ In larceny, there must be, first, an intent to trespass on another’s, property; secondly, this not being alone sufficient, the further intent, to deprive the owner of his ownership therein must be added. So,, burglary consists of the intent, which must be executed, to break in the night time into a dwelling house; and the further concurrent-intent, which may be executed or not, to commit therein some crime-which is in law a felony. In these, and other like cases, the particular, or ulterior, intent must be proved, in addition to the more general one, in order to make out the offence, and nothing will answer as a substitute." (Italics are ours.)
See also Wharton’s Criminal Evidence, Sec. 431. 29 Iowa, State vs. Bell, 316.
Applying these principles to the case at bar it is clear that all evidence, whether offered by the prosecution or by the defence, tending-to show or prove the real intent with which the offenders broke-into the house of Dupléchin, was competent, and therefore admissible with this exception, however, that the State was restricted to proof, that the intent was to kill.
*277 But as to the accused, a wider field was open to them, as they were • entitled to prove that their intent was anything else but that to kill, ■ even if the intent was in itself unlawful and unjustifiable in law.
In theory the principle is recognized by the trial judge, who said in his charge to the jury:
“Finally, it must be shown that the accused entered and broke with intent to kill. This intent must coexist with the entering and breaking, that is to say, the accused must be proved to have had this intent at the time of this entry and breaking, and your inquiry must be confined to that intent in ascertaining the guilt or innocence of the accused in so far as this ingredient of the crime charged is concerned. •* * * Hence the only intent you are to consider is the :intent to kill. You can not legally convict the accused unde the indictment for entering and breaking with intent to rob, to steal, to ■commit rape, or any other crime than the one charged, to-wit, the iintent to kill.”
.But the complaint of appellants is that in each of the three trials they were unjustly deprived of practical protection under the principle by the rulings of the trial judge in persistently excluding all proffered testimony tending to show the real, whole intent with which they entered the prosecutor’s house. His rulings on that point were the subjects of numerous bills in each of the trials.
In one of the bills the District Judge makes the statement that the following facts had gone to the jury as part of the testimony given by the accuse!, testifying in their own behalf:
“That they, or a majority of them, belonged to an unlawful organization called “ regulators ” or “ white caps; ” that they armed themselves with pistols and guns, and went in a body to the house of Dupléchin about 1 o’clock, that all were masked except one, a comparative stranger in the neighborhood, named Falgout, totally unknown to Dupléchin; that Falgout, a member of this body, representing himself to Dupléchin to be a sheriff, induced him to open his window; that he demanded of Dupléchin the woman “ Filie.” Upon being asked what he wanted of her, he said it was none of his business ; that immediately thereafter Falgout jumped through the window of Dupléchin’s house, across his bed, and presenting his pistol to Dupléchin ordered him not to move, immediately shouting to his confederates ‘Break, enter! I hold him!’ That a moment afterward several members of the party having secured an entrance *278 into the house caught and dragged the woman Filie out of the house; that about this time Dupléchin, having secured possession of his gun, snapped it at the party who were engaged in dragging away the woman Filie in his yard. The gun having failed to fire first shot he (D.) fired the second shot, which was almost simultaneously returned by the party having possession of Filie, resulting in Dupléchin being shot down in his own house, and one of the accused being wounded in the leg. That immediately thereupon the. accused fired some five or six shots in the house, after which they left.”
Conceding, arguendo, that these acts of the accused justified the presumption that the accused had gone to that house with the preconceived intent to kill, it is undeniable that such a presumption could be rebutted.
To that end was directed the efforts of their counsel, in seeking to prove that the defendants’ real intent in going to that house was to break up a state of concubinage which had long existed between Dupléchin and the woman Filie, under his own roof, in the midst of his own family, which included some grown daughters, which conduct had become a subject of scandal in the neighborhood, to such an extent that some of the “regulators” had been requested by a married daughter of Dupléchin to interfere in the matter.
The means of accomplishing that end, according to the theory sought to be proved by the appellants, was to take the woman out of the house and to chastise her. It appears from the bills of exception that the accused were allowed to prove that their object in going to the house was to chastise the woman Filie; but when they attempted to prove further that their real and ultimate intent was to force her to leave Dupléchin’s house, and thus to put an end to the state of concubinage between the two, their oft repeated efforts in that line were persistently suppressed by the trial judge, on objection by counsel for the State.
It is quite apparent from the record that the judge’s reiterated rulings on this point were predicated on a misapprehension of the object in view by defendant’s counsel in introducing that line of evidence. In one of the bills he says:
“ During the whole course of the trial of Charles Arabie and Blanc Beard, and also during the trial of the accused in this case, Syphryen Méche and Lastie Smith, a persistent effort was made on the; part of the counsel for the accused to get before the jury some evi *279 dence in regard to alleged illegitimate sexnal relations between Dupléchin and the woman Pille. Various grounds have been alleged as a basis for the admission of such testimony; sometimes to show the feeling, bias and prejudice of the witness; sometimes for the purpose of contradiction, etc. But the real and true purpose, in the opinion of the court, sought to be accomplished by its introduction, was to bring to the aid of the accused, in their defence, and a justification for the crime charged, race prejudice on the part of the jury. Granting that each of the questions propounded herein were answered in the affirmative, and even conceding that improper sexual relations existed between the prosecutor Dupléchin and the woman Pille, it would not either in law or justice constitute either a justification or a mitigation of the outrage alleged to have been committed by the accused and is not admissible for such purpose.”
Not a word can be found in the record on which to rest even an inference that counsel for the accused had the remotest intention of justifying their clients either for the acts which had been proved against them on the trial, or for the charge propounded against them in the indictment. No one can legally justify the acts which the accused themselves admitted on the witness stand to have perpetrated, even though they had been committed with the sole intent which éounsel were striving all through the trial to prove or to show.
That question was not in the case under the indictment as framed, or under the issue joined between the State and the prisoners by the plea of not guilty.
As the accused in their testimony admitted that, being armed with dangerous weapons, they had broken in the night into the house of the prosecutor, on whom they had shot in returning his fire as they were leaving his premises, the only issue left for determination was the question of their intent in going to that house under the circumstances recited by the judge, and hereinabove transcribed.
The record shows that when the State witnessess were being-examined in chief, some of them, who had turned State’s evidence, had testified as to the intent of themselves and of them co-conspirators in going to that house; others, such as the woman Pille, had explained her purpose in being at the prosecutor's house that, night. On cross-examination counsel for the accused sought to question these witnesses touching the relations existing between Dupléchin and the woman in question. On objection from the prose- *280 ration, in such instances, counsel for the defence urged some of the reasons attributed to them by the trial judge in the language just transcribed. The admissibility of those questions will be considered in another part of this opinion.
But when defendants’ counsel were examining some of their own •clients as witnesses, and proposed to pursue that line of investigation,, they invariably contended that the testimony which they thus ^sought to elicit was admissible, “ for the purpose of showing that the entry was not made with intent to kill, as charged in the indictment.”
According to correct rules of jurisprudence, under the charge as herein made, the door was wide open to the accused for evidence to show their real intent, and to prove that it was not intent to kill; and that right could not have been denied them even if they had killed Dupléchin when they shot at him. If his death had ensued they might have been guilty of murder, and they might have been convicted of that crime under a proper charge, but under the indictment presented in this case they could not have been convicted of burglary if the proof had showed that at the time of entering their .intent was not to kill.
Under the law, as expounded by all the authorities, courts as well as text writers, the accused in this case had the right to introduce proof of their real, full and whole intent in going to Dupléchin’s’ house; and under the rulings complained of they were allowed to offer but a partial explanation.
It was their right to offer testimony to show that their real intent was to break up an alleged scandalous concubinage by taking out of the paramour’s house, and chastising, the alleged concubine; but they were forbidden to show any other intent but that of taking out with the intent of chastising, a woman, merely named, but not otherwise described, or connected by the testimony with the res gestsa.
The admitted testimony, which was to the effect that the intent was to take out and chastise a certain woman, was not evidence of itself of the alleged original and controlling intent, which was to interfere with a reprehensible concubinage. It is argued that proof of an intent to suppress a concubinage could coexist with the ulterior intent to kill, as the killing of one or both of the participants would certainly have operated the most efficient suppression of the alleged evil. The proposition may be correct in the abstract, but the means of rebutting that presumption were at hand through the rejected *281 -testimony, which was intended to show that the real intent was to ¡suppress the concubinage, not by killing either of the parties to it, but by taking out and chastising the woman. Hence flows the legal necessity of admitting proof of the whole intent, in its two component parts. The proof of intent was not entire by the restricted proof of the intent to take out and chastise the woman; it would not have been complete with the restricted proof of an intent to put an end to a scandalous concubinage; but by the admission of proof of both of the concurring elements of the ulterior intent, as repeatedly announced by 'counsel for the accused, a rational though not a lawful intent would have thus been presented to the consider- ■ ation of the jury, who could have determined whether it was or not •sufficient to negative the alleged intent to kill, as to the motive and .at the time of entry.
The rejected testimony was therefore in law, as well as in justice, ■admissible for the intended purpose, and the jury would have been the sole judges of its effect on the point in contention. “The intent • of the parties will be gathered from all the circumstances of the ■ case,” and is] to be tested and determined by the jury. Roseoe’s 'Criminal Evidence, p. 866.
Dealing with a kindred subject, Roscoe (p. 24) also says:
“ Where it is relevant and material to inquire into the conduct of .rioters, what has been said by any of the party in the act of rioting, must manifestly be admissible in evidence, as showing their design ■and intention.”
On the same subject, Wharton’s Criminal Evidence, Sec. 691, •contains the following language:
•“ Declarations made by a defendant in his own favor, unless part ■of the res gestee, or of a confession offered by the prosecution, are not admissible for the defence. * * In any view, therefore, the extra judicial, self-serving declarations of a party are inadmissible for him, with the exceptions hereafter stated, as evidence to prove his case. It is otherwise when such declarations are part of the res gestee. It is not, however, necessary that such declarations, to be part of the res gestee, should be precisely concurrent with the act under trial; it is enough if they spring from it, and are made under •circumstances which preclude the idea of design.”
The principles thus formulated were also authority for the State to interrogate some of the conspirators, who had turned State’s evi *282 dence, as to their common design in going to Dupléchin’s house, and' the same rule should have opened the door to the counsel for the defence to pursue that line of investigation in their cross-examination of these same witnesses, but by his ruling the trial judge denied them that right.
This is the first error falling under the second ground of complaint of appellants, as indicated in the beginning of this opinion.
All the incidents embraced in the foregoing considerations apply to all three pf the cases now on appeal, and enough has been said to. justify the remanding of the three cases.
The following contention arose in the cases of Arabie and Beard,, and of S. Méche and Smith alone; it hinges upon the examination of the woman Pille, who was not offered as a witness in the other or third case, which was the trial of Jerome Méche.
It appears from bills reserved in the two first above named cases, that the woman Pille, a State witness, having stated in her examination in chief that she had promised to the late Mrs. Dupléchin, during' her last illness, to take care of her children, and that she was on the night of the incident at that house for the purpose of nursing one of those children who was sick, was asked on cross-examination, in substance, whether she had not been Dupléchin’s concubine for many years, and whether she had not had several children from him.
On objection, that cross-examination was promptly suppressed.
The sole and manifest object of the prosecution in eliciting the statement just quoted from the woman, was to negative the anticipated testimony on the part of the defence to show the existence of illicit relations between the prosecutor and the witness, and to prove that her presence at that house was due to entirely different and to very laudable causes. It was clearly inadmissible as evidence for any other purpose. The State herself having opened the door to that line of investigation, could not and should not have been allowed to close it to the defence.
This point is fairly and entirely covered by the decision of this, court in the case of Claire and Gibson, 41 An. 191.
To illustrate the principle under consideration,, it is sufficient to-quote only the following syllabus from that opinion:
“ On a trial for murder, the State having introduced evidence to> prove malice and premeditation, by the testimony of a witness from whom the accused had purchased a pistol a few days previous to the. *283 homicide, it is competent for the accused to interrogate the same witness with a view to show that in making preparations for a combat, he was preparing for an anticipated attack to be made on him by another person not connected with the homicide on trial.”
Here the State having attempted to prove a laudable purpose to account for the presence of the woman Filie at the house of the prosecutor, it was competent for the accused to interrogate her on the same subject with a view to contradict her, and to show that she was there for a very different purpose, and for the very reason which had prompted them in trying to take her out of that house, rightfully or wrongfully.
The record contains manj and numerous other bills, but it becomes unnecessary to prolong this discussion.
This opinion contains reasons amply sufficient to justify the following decrees:
1. In the trial of Charles Arabie and Aruilieu, otherwise called Blanc Beard.
For the reasons given'in the above and foregoing opinion, ibis ordered, adjudged and decreed that the verdict of the jury, and the sentence of the District Court rendered against the said Charles Arabie alias Blanc Beard be quashed, annulled and set aside; and it is now ordered that said case be remanded to the District Court for further proceedings according to law and to the views expressed in said opinion.
2. In the trial of Syphroyen Méche and Lastie Smith.
For the reasons given in the foregoing opinion: It is ordered, adjudged and decreed that the verdict rendered against the aforesaid Syphroyen Méche and Lastie Smith be quashed and set aside, and the judgment rendered thereon annulled, avoided and reversed. And it is now ordered that'said case be remanded to the District Court for further proceedings according to law and according to the views expressed in said opinion.
3. In the trial of Jerome Méche.
For the reasons given in the foregoing opinion: It is ordered that the verdict of the jury in this case be quashed and set aside, and that the judgment herein be annulled, avoided and reversed. And that the cause be remanded to the District Court for further proceedings according to law and according to the views expressed in the aforesaid opinion.